**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

ELECTRONICALLY
FILED
Aug 07 2026
U.S. DISTRICT COURT
Northern District of WV

NOVO NORDISK INC. and NOVO
NORDISK A/S,

        Plaintiffs,

    v.

VIATRIS INC. and MYLAN
PHARMACEUTICALS INC.,

        Defendants.

Civil Action No. ___1:26-cv-100___ (Kleeh)

## COMPLAINT

Plaintiffs Novo Nordisk Inc. and Novo Nordisk A/S (collectively, "Novo Nordisk"), for their Complaint against Defendants Viatris Inc. ("Viatris") and Mylan Pharmaceuticals Inc. ("MPI") (collectively, "Defendants"), allege as follows:

## THE PARTIES

1. Plaintiff Novo Nordisk Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey 08536.

2. Plaintiff Novo Nordisk A/S is an entity organized and existing under the laws of the Kingdom of Denmark, having its principal place of business at Novo Allé, 2880 Bagsvaerd, Denmark. Novo Nordisk Inc. is an indirect, wholly owned subsidiary of Novo Nordisk A/S.

3. On information and belief, Viatris is a corporation organized and existing under the laws of Delaware, having a principal place of business at 1000 Mylan Blvd., Canonsburg, Pennsylvania, 15317. On information and belief, acting in concert with MPI, Viatris is in the

business of making and selling generic pharmaceutical products, which they distribute in the State of West Virginia and throughout the United States.

4.      On information and belief, MPI is a corporation organized and existing under the laws of the State of West Virginia, with a place of business at 3711 Collins Ferry Road, Morgantown, WV 26505.  On information and belief, MPI is in the business of making and selling generic pharmaceutical products, which it distributes in the State of West Virginia and throughout the United States.  On information and belief, MPI is an agent, affiliate, wholly owned subsidiary and/or alter ego of Viatris and subsumed within Viatris.

5.      On information and belief, Defendants collaborate to develop, manufacture, seek regulatory approval for, import, market, distribute, and sell generic pharmaceutical products in the State of West Virginia and throughout the United States.

6.      On information and belief, MPI is an agent of Viatris, with Viatris exercising considerable control over MPI with respect to generic pharmaceutical products, and with Viatris approving significant decisions of MPI, such as allowing MPI to act as its agent in connection with the preparation, submission, approval and maintenance of Abbreviated New Drug Applications ("ANDAs"), including ANDAs as submitted and amendments thereto.  On information and belief, MPI is, and presents itself as, a part of Viatris.  *See, e.g.*, Viatris Inc. Form 10-K (Feb. 26, 2026), https://www.sec.gov/Archives/edgar/data/1792044/000179204426000013/vtrs-20251231.htm (last visited August 4, 2026); Viatris Inc. Form 10-K (Feb. 27, 2023), https://www.sec.gov/Archives/edgar/data/1792044/000179204423000008/vtrs-20221231.htm (last visited August 4, 2026) (defining Viatris as "the Company" and MPI as a "wholly owned subsidiary of the Company"); Viatris Inc. Form 10-Q (August 8, 2022), https://www.sec.gov/Archives/edgar/data/1792044/000179204422000028/vtrs-20220630.htm

(last visited August 4, 2026) (identifying MPI as a "wholly owned subsidiary" of the Company).

7. On information and belief, Viatris attributes United States Food and Drug Administration ("FDA") submissions and approvals of ANDAs submitted by MPI as Viatris's FDA ANDA submissions and approvals. *See, e.g.*, Viatris Inc. Form 10-K (Feb. 26, 2026), https://www.sec.gov/Archives/edgar/data/1792044/000179204426000013/vtrs-20251231.htm (last visited August 4, 2026) ("The Company is working . . . on the potential to be first to market for its generics of . . . Ozempic®, and Wegovy™"); Ex. 6 (*Viatris: Complex Injectable Pipeline Opportunities Worth at Least $1bn*, GENERICS BULLETIN, Pharma Intelligence (Nov. 8, 2022)) ("A generic version of Novo Nordisk's GLP-1 receptor against Wegovy (semaglutide) treatment for obesity is among seven complex generic injectables for which Viatris is claiming first-to-file status, as it looks to growth in 2024 and beyond.").

8. On information and belief, MPI acts as an agent for Viatris for purposes including, but not limited to, corresponding with FDA. On information and belief, products identified by FDA as products of "Mylan Pharmaceuticals Inc." or "Mylan Pharmaceuticals Inc., a Viatris Company" are identified on Viatris's website as Viatris products. *E.g., compare* FDA Listing of Authorized Generics as of July 2, 2026, https://www.fda.gov/media/77725/download (last visited August 4, 2026), *with* Viatris Inc.'s Product Catalog, https://www.viatris.com/en-us/lm/countryhome/us-products/productcatalog/ (last visited August 4, 2026).

9. On information and belief, MPI acts as an agent for Viatris for purposes including, but not limited to, providing notice of Paragraph IV certifications to patent owners and NDA holders in connection with Defendants' ANDA filings and defending against any subsequent infringement claims under 35 U.S.C. § 271(e)(2). Viatris's 2025 10-K states: "Viatris invests a significant amount of capital and resources in R&D . . . . [Viatris] also often incur[s] substantial

litigation expense as a result of defending or challenging brand patents or exclusivities."  Viatris

Inc.         Form         10-K         (Feb.         26,         2026),

https://www.sec.gov/Archives/edgar/data/1792044/000179204426000013/vtrs-20251231.htm

(last visited August 4, 2026).  Viatris's 2025 10-K report further states:  "The Company is involved

in a number of patent litigation lawsuits involving the validity and/or infringement of patents held

by branded pharmaceutical manufacturers.  The Company uses its business judgement to decide

to market and sell certain products, in each case based on its belief that the applicable patents are

invalid and/or that its products do not infringe, notwithstanding the fact that allegations of patent

infringement(s) or other potential third party rights have not been finally resolved by the courts."

*Id*.  In connection with that statement, Viatris's 2025 10-K report identifies multiple Hatch-

Waxman litigations in which MPI is involved as litigations that will impact Viatris.  *Id*.

10.     On information and belief, since the merger of Mylan N.V., MPI's former parent

company, and Upjohn Inc. to create Viatris in November 2020, any corporate separateness that

may have existed between Viatris and MPI shortly after the formation of Viatris has dissolved,

and MPI is now no more than an alter ego for Viatris, subsumed within Viatris.

11.     On information and belief, MPI holds itself out to the public, including through

press releases posted to Viatris's website and communications to FDA, as "Mylan

Pharmaceuticals Inc., a Viatris company."  *See, e.g.,*  https://newsroom.viatris.com/2022-01-18-

Mylan-Pharmaceuticals-Inc-,-a-Viatris-Company,-Conducting-Voluntary-Recall-of-One-Batch-

of-Semglee-R-insulin-glargine-injection-,-100-units-mL-U-100-,-3-mL-Prefilled-Pens,-Due-to-

the-Potential-for-a-Missing-Label-in-the-Batch     (last     visited     August     4,     2026;

https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/mylan-pharmaceuticals-inc-

viatris-company-conducting-voluntary-recall-one-batch-semgleer-insulin (last visited August 4,

2026); https://www.fda.gov/media/77725/download (last visited August 4, 2026); https://www.pharmacy.ca.gov/about/recall_alerts/012026_mylan.pdf (last visited August 4, 2026); https://www.pharmacy.ca.gov/about/recall_alerts/032026_mylan.pdf (last visited August 4, 2026).

12.     On information and belief, Viatris's website states:  "Viatris was formed in 2020 through the combination of Mylan and Upjohn . . . .  By integrating the strengths of these two companies, including our global workforce of ~38,000, we aim to deliver increased access to affordable, quality medicines for patients worldwide.  . . . Our global portfolio includes best-in-class . . . generics, including branded and complex generics; across a wide range of therapeutic areas."  *See*  https://www.viatris.ph/en-ph/about-us/our-story (last visited August 4, 2026); https://newsroom.viatris.com/2020-11-16-Viatris-Inc-Launches-as-a-New-Kind-of-Healthcare-Company-Positioned-to-Meet-the-Worlds-Evolving-Healthcare-Needs#:~:text=Formed%20in%20November%202020%20through,than%20165%20countries%20and%20territories (last visited August 4, 2026).

13.     On information and belief, www.mylan.com, the website for all Mylan entities, including MPI, redirects access to www.viatris.com, the website for Viatris, along with a statement that: "Mylan is now part of Viatris, a new global healthcare company committed to empowering people to live healthier at every stage of life."  *See* https://www.mylan.com (last visited August 4, 2026).  On information and belief, the LinkedIn website for Mylan entities, including MPI, states: "Follow us on our new journey as Viatris.  www.linkedin.com/ company/Viatris," and "We have combined with Upjohn, a legacy division of Pfizer, and are now Viatris.  Follow along on our new journey as we empower people worldwide to live healthier at every stage of life.  www.linkedin.com/company/viatris."     *See*   https://www.linkedin.com/company/mylan/   (last

visited August 4, 2026).  On information and belief, MPI's holding itself out as Viatris and the redirection from www.mylan.com to www.viatris.com demonstrates that MPI is subsumed within, and an alter ego of, Viatris.

14.    On information and belief, Viatris is transitioning the Viatris brand around the world, both commercially and operationally.  As part of the transition, Viatris has been divesting MPI properties, assuming MPI corporate responsibilities, absorbing MPI employees, commingling funds with MPI, and subsuming MPI.  For instance, on information and belief, by March 7, 2022, Viatris closed MPI's facility located at 781 Chestnut Ridge Road, Morgantown, West Virginia, 26505 and auctioned off its equipment.  *See, e.g.,* https://www.wboy.com/news/local/monongalia-and-preston/former-mylan-viatris-facility-auctions-off-equipment/ (last visited August 4, 2026); https://www.hgpauction.com/auctions/110662/viatris-morgantown-2/ (last visited August 4, 2026).  On information and belief, on March 31, 2022, West Virginia University assumed ownership of 781 Chestnut Ridge Road, Morgantown, West Virginia, 26505, after purchasing the property for $1 from Viatris. *See, e.g.,* https://www.wvnews.com/news/wvnews/former-mylan-plant-purchased-by-west-virginia-university-for-1-with-plans-to-house-business/article_5af8d6d0-b9f8-11ec-9574-6b3dce9aba75.html (last visited August 4, 2026).

15.    On information and belief, upon the creation of Viatris, the former executive chairman of Mylan N.V., Robert J. Coury, became Viatris's executive chairman.  *See, e.g.,* https://www.viatris.de/de-de/uber-viatris/unsere-fuhrungskrafte/robert-j-coury (last visited on August 4, 2026).  On information and belief, Mr. Coury "leads the [Viatris] board of directors, oversees the strategic direction of the company in collaboration with executive management, and advises the management team as they execute on the company's strategy to drive value creation . . . ." *Id.*  On information and belief, one or more of MPI's corporate officers and employees are

shared with or have been subsumed by Viatris. *See, e.g.,* https://www.fiercepharma.com/pharma/mylan-crowns-former-ceo-coury-as-executive-chairman-as-upjohn-merger-deal-faces-delays (last visited August 4, 2026); https://www.viatris.com/en/about-us/our-leaders (last visited August 4, 2026); Viatris Inc. 2021 Proxy Statement, https://www.sec.gov/Archives/edgar/data/1792044/000119312521313437/d163117ddef14a.htm (last visited August 4, 2026).

16. Further, on information and belief, the shared and subsumed corporate officers and employees demonstrate that MPI is subsumed within, and an alter ego of, Viatris. On information and belief, MPI's shared or subsumed officers maintain their offices at Viatris's principal place of business at 1000 Mylan Blvd., Canonsburg, Pennsylvania, 15317. *See, e.g.,* Viatris Inc. 2026 Proxy Statement, https://www.sec.gov/Archives/edgar/data/1792044/000114036126013002/ny20062029x771_def14a.htm (last visited August 4, 2026); *see also, e.g.*, Viatris Inc. 2021 Proxy Statement, https://www.sec.gov/Archives/edgar/data/1792044/000119312521313437/d163117ddef14a.htm (last visited August 4, 2026). On information and belief, Defendants' use of the same office or business location demonstrates that MPI is subsumed within, and an alter ego of, Viatris.

17. On information and belief, upon formation, Viatris assumed various agreements between MPI and certain MPI officers, including retention agreements and retirement benefit agreements. *See, e.g.,* Viatris Inc. 2021 Proxy Statement, https://www.sec.gov/Archives/edgar/data/1792044/000119312521313437/d163117ddef14a.htm (last visited August 4, 2026).

18. On information and belief, MPI employees presently identify as employees of

Viatris, demonstrating that MPI is subsumed within, and an alter ego of, Viatris. *See, e.g.,* Ex. 7 (Brandon McMahon's LinkedIn). On information and belief, present MPI job listings indicate employment is with Viatris, demonstrating that MPI is subsumed within, and an alter ego of, Viatris. *See, e.g.,* https://www.ziprecruiter.com/Jobs/Mylan-Pharmaceuticals (last visited August 4, 2026).

19. On information and belief, Viatris and certain lenders entered into a $4.0 billion revolving facility agreement (the "2021 Revolving Facility") on July 1, 2021, to which MPI has or has had access. *See* Viatris Inc. Form 10-K (Mar. 1, 2021) https://www.sec.gov/ix?doc=/Archives/edgar/data/0001792044/000179204421000009/vtrs-20201231.htm (last visited August 4, 2026). On information and belief, Viatris and MPI operate as a single entity with the ability to borrow funds from certain lenders with whom Viatris has instituted revolving loan accounts.

20. On information and belief, Viatris entered into a $400 million "Receivables Facility" agreement in 2020, which expired in April 2025. *See* Viatris Inc. Form 10-K (Mar. 1, 2021) https://www.sec.gov/ix?doc=/Archives/edgar/data/0001792044/000179204421000009/vtrs-20201231.htm (last visited August 4, 2026); Viatris Inc. Form 10-K (Feb. 27, 2023), https://www.sec.gov/Archives/edgar/data/1792044/000179204423000008/vtrs-20221231.htm (last visited August 4, 2026). MPI "has access to $400 million under the Receivables Facility." Viatris Inc. Form 10-K (Feb. 27, 2023), https://www.sec.gov/Archives/edgar/data/1792044/000179204423000008/vtrs-20221231.htm (last visited August 4, 2026). On information and belief, MPI, operating as a single entity with Viatris, is able to sell MPI's accounts receivables to Mylan Securitization LLC, a Viatris

subsidiary, under Viatris's Receivables Facility agreement for the purpose of accessing instant funds from outstanding unpaid invoices. *Id.* On information and belief, MPI is thereby funded through Viatris's subsidiary Mylan Securitization LLC. On information and belief, Viatris and MPI's joint use of the 2021 Revolving Facility and Receivables Facility demonstrates the commingling of funds and that MPI is subsumed within, and is an alter ego of, Viatris.

21.    On information and belief, to resolve class action cases pending in the U.S. District Court for the District of Kansas, Viatris agreed to pay settlement fees of $264 million on behalf of defendants, including MPI. *See* Viatris Inc. Form 10-Q (May 9, 2022), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001792044/000179204422000017/vtrs-20220331.htm (last visited August 4, 2026); *In Re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, MDL No. 2785, 17-md-2785-DDC-TJJ (D. Kan. March 11, 2022). On information and belief, the payment of debt incurred by Viatris and its subsidiaries demonstrates a commingling of funds between Viatris and its subsidiaries, including MPI, a lack of corporate separateness, and Viatris subsuming Mylan subsidiaries, including MPI.

## NATURE OF THE ACTION

22.    This action arises under the patent laws of the United States, Title 35, United States Code, § 100 *et seq.*, including 35 U.S.C. §§ 271(a), (b), (c), and (e), arising from Defendants' submission of Abbreviated New Drug Application No. 221156 ("Defendants' ANDA") to FDA, by which Defendants seek approval of a generic version of Novo Nordisk's pharmaceutical product WEGOVY® (semaglutide) tablets, 9 mg ("WEGOVY® tablets"), prior to the expiration of United States Patent Nos. 10,278,923 (the "'923 Patent"); 11,033,499 (the "'499 Patent"); 11,833,248 (the "'248 Patent"); and 12,396,953 (the "'953 Patent") (collectively, the "Asserted Patents"), attached hereto as Exhibits 2–5, which cover, *inter alia*, WEGOVY® tablets and/or their use.

9

23.　　Novo Nordisk A/S is the owner of all rights, title, and interest in the Asserted Patents.

24.　　Novo Nordisk Inc. is the holder of New Drug Application No. 218316 ("Novo Nordisk's NDA"), encompassing WEGOVY® tablets, which Novo Nordisk Inc. sells under the trade name WEGOVY®.　Novo Nordisk Inc. holds the exclusive right to sell, distribute, and market WEGOVY® tablets in the United States.

25.　　The Asserted Patents are listed in FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as the "Orange Book") in connection with WEGOVY® tablets and the related NDA.

## NOVO NORDISK'S WEGOVY® TABLETS

26.　　The Prescribing Information for WEGOVY® tablets (the "WEGOVY® Label"), attached hereto as Exhibit 1, states that "WEGOVY is a glucagon-like peptide-1 (GLP-1) receptor agonist" and "WEGOVY tablets are indicated in combination with a reduced calorie diet and increased physical activity" "[t]o reduce the risk of major adverse CV events (CV death, non-fatal myocardial infarction, or non-fatal stroke) in adults with established CV disease and either obesity or overweight" and "[t]o reduce excess body weight and maintain weight reduction long term in adults with obesity, or in adults with overweight in the presence of at least one weight-related comorbid condition."　Ex. 1 at 1.

27.　　WEGOVY® tablets are for oral use, to be administered once daily.　Each tablet of WEGOVY® contains 1.5 mg, 4 mg, 9 mg, or 25 mg of semaglutide.　Ex. 1 at 1.

28.　　The WEGOVY® Label instructs that WEGOVY® tablets should be administered according to a dose escalation schedule that includes initiating a dosage of 1.5 mg of semaglutide once daily for 30 days, increasing the dosage to 4 mg once daily for the next 30 days, then increasing the dosage to 9 mg once daily for the next 30 days, and then increasing the dosage to

25 mg once daily.  Ex. 1 at 3.

29. The active ingredient in WEGOVY® tablets is semaglutide, which has the following structure:

Figure 1. Structural Formula of Semaglutide

Ex. 1 at 8.  This is the same active ingredient present in two of Novo Nordisk's other oral products, specifically, RYBELSUS® and OZEMPIC® tablets.

30. The WEGOVY® Label states that the half-life of semaglutide is approximately one week.  Ex. 1 at 8.

31. The WEGOVY® Label lists the following as inactive ingredients in WEGOVY® tablets: "magnesium stearate and salcaprozate sodium (SNAC)."  Ex. 1 at 8.

**DEFENDANTS' ANDA AND PARAGRAPH IV CERTIFICATION**

32. On information and belief, Defendants submitted Defendants' ANDA under Section 505(j) of the Federal Food, Drug, and Cosmetic Act ("FFDCA"), *i.e.*, 21 U.S.C. § 355(j), seeking approval to commercially manufacture, use, sell, offer to sell, distribute, and/or import a generic version of WEGOVY® tablets (9 mg), for oral administration pursuant to Defendants' ANDA ("Defendants' ANDA Product").

33. On information and belief, following any FDA approval of Defendants' ANDA, Defendants will manufacture, use, sell, offer to sell, distribute, and/or import Defendants' ANDA Product throughout the United States, including within West Virginia.

34. On information and belief, Defendants' ANDA refers to and relies upon Novo Nordisk's NDA and contains data that, according to Defendants, demonstrates the bioequivalence of Defendants' ANDA Product and WEGOVY® tablets (9 mg).

35. On information and belief, Defendants made and included in Defendants' ANDA a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) (the "Paragraph IV Certification") that, in their opinion and to the best of their knowledge, the claims of the Asserted Patents, which are all listed in FDA's Orange Book in connection with WEGOVY® tablets and the related NDA, are invalid and/or not infringed.

36. On information and belief, Defendants made and included in Defendants' ANDA a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(III) (the "Paragraph III Certification") that it will not launch their ANDA Product prior to the expiration of U.S. Patent Nos. 8,129,343, 8,536,122, 9,278,123, 10,086,047, 10,960,052, or 11,382,957, which are also listed in FDA's Orange Book in connection with WEGOVY® tablets and the related NDA.

37. Novo Nordisk received written notice of Defendants' ANDA and Paragraph IV Certification as to the Asserted Patents (the "Notice Letter"), dated June 26, 2026, along with an enclosed statement that is required to state all the factual and legal bases for Defendants' contention that the commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Defendants' ANDA Product allegedly will not infringe any valid claim of the patents that Defendants included in their Paragraph IV Certification and/or that the claims of such patents are invalid and/or unenforceable (the "Detailed Statement"). Defendants' Detailed

Statement, however, does not allege or provide any factual or legal bases to assert that any of the patents identified in the Notice Letter are unenforceable.  Nor do Defendants allege or provide any factual or legal bases to assert that all claims of the '923 Patent and '499 Patent are not infringed by the dosage strength of Defendants' ANDA Product apart from a challenge to the validity of such claims.  Further, Defendants' Detailed Statement provides no arguments that the '248 Patent or '953 Patent are invalid.

38.     This action is being commenced within 45 days of receipt of the Notice Letter.

39.     Defendants have infringed one or more claims of the Asserted Patents under 35 U.S.C. § 271(e)(2)(A) by filing Defendants' ANDA, including any amendments or supplements thereof, seeking FDA approval to commercially manufacture, use, offer for sale, sell, distribute in, and/or import into the United States Defendants' ANDA Product before the expiration of the Asserted Patents, including any extensions thereof.

40.     Defendants will infringe one or more claims of the Asserted Patents under 35 U.S.C. §§ 271(a), (b), and/or (c) should Defendants engage in, induce, and/or contribute to the commercial manufacture, use, offer for sale, sale, distribution in, and/or importation into the United States of Defendants' ANDA Product before the expiration of the Asserted Patents, including any extensions thereof.

**JURISDICTION**

41.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

42.     This Court has personal jurisdiction over Defendants because, on information and belief, Defendants, including with MPI acting as an agent of Viatris, have committed and/or have aided, abetted, contributed to, or participated in the commission of tortious acts of patent infringement in preparing and submitting Defendants' ANDA with a certification pursuant to 21

U.S.C. § 355(j)(2)(A)(vii)(IV), including its amendments, seeking FDA approval with the intent to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of Defendants' ANDA Product in or into the United States, including West Virginia, prior to the expiration of the Asserted Patents, which acts have led to foreseeable harm and injury to Novo Nordisk in West Virginia.

43.    Further, this Court has personal jurisdiction over Defendants because, on information and belief, Defendants, including with MPI acting as an agent of Viatris, upon approval of Defendants' ANDA, will commit or will aid, abet, contribute to, or participate in future tortious acts of patent infringement permitted under Defendants' ANDA, if approved, that will be purposefully directed at West Virginia, including the marketing of Defendants' ANDA Product in West Virginia, prior to the expiration of the Asserted Patents.

44.    For example, on information and belief, MPI acted as an agent of Viatris in the preparation and submission of Defendants' ANDA, including amendments, and, if Defendants' ANDA is approved, MPI will continue to act as an agent of Viatris to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of Defendants' ANDA Product in or into the United States, including West Virginia, prior to the expiration of the Asserted Patents.

45.    For example, on information and belief, Defendants, including with MPI acting as an agent of Viatris, have taken the costly, significant step of applying to FDA for approval, including submission of Defendants' ANDA and amendments thereto, to engage in future activities, including the marketing of Defendants' ANDA Product, that will be purposefully directed at West Virginia and elsewhere.

46.    For example, on information and belief, MPI, acting as an agent of Viatris, has systematic and continuous contacts with West Virginia; has established distribution channels for

drug products in West Virginia; regularly and continuously conducts business in West Virginia, including by selling drug products in West Virginia, either directly or indirectly through its subsidiaries, agents, or affiliates; has purposefully availed itself of the privilege of doing business in West Virginia; and derives substantial revenue from the sale of drug products in West Virginia.

47. For example, on information and belief, Viatris, through MPI acting as an agent of Viatris, has systematic and continuous contacts with West Virginia; has established distribution channels for drug products in West Virginia; regularly and continuously conducts business in West Virginia, including by selling drug products in West Virginia, either directly or indirectly through its subsidiaries, agents, or affiliates; has purposefully availed itself of the privilege of doing business in West Virginia; and derives substantial revenue from the sale of drug products in West Virginia.

48. This Court has personal jurisdiction over Defendants because, on information and belief, Defendants, acting in concert, with MPI and Viatris acting as a single enterprise, and/or with MPI acting as an alter ego of Viatris, have committed and/or have aided, abetted, contributed to, or participated in the commission of tortious acts of patent infringement in preparing and submitting Defendants' ANDA with a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), including their amendments, which acts have led to foreseeable harm and injury to Novo Nordisk in West Virginia.

49. Further, this Court has personal jurisdiction over Defendants because, on information and belief, Defendants, acting in concert, with MPI and Viatris acting as a single enterprise, and/or with MPI acting as an alter ego of Viatris, upon approval of Defendants' ANDA, will commit or will aid, abet, contribute to, or participate in future tortious acts of patent infringement permitted under Defendants' ANDA that will be purposefully directed at West

15

Virginia, including the marketing of Defendants' ANDA Product in West Virginia, prior to the expiration of the Asserted Patents.

50. Further, this Court also has personal jurisdiction over Defendants because, on information and belief, each such Defendant's affiliations with the State of West Virginia, including Viatris's principal place of business in West Virginia, Viatris's ownership of and actions in concert and as a single enterprise with MPI, and/or MPI's existence as an alter ego of Viatris, are sufficiently continuous and systematic as to render each Defendant essentially at home in this forum.

51. For example, on information and belief, Defendants, acting in concert, with MPI and Viatris acting as a single enterprise, and/or with MPI acting as an alter ego of Viatris, develop, manufacture, distribute, sell and/or import drug products for the entire United States market and do business in every state including West Virginia, either directly or indirectly.

52. For example, on information and belief, including, based on, *inter alia*, Defendants' website, public SEC filings, and public press releases, Defendants hold themselves out as a unitary entity and operate as a single integrated business with respect to the regulatory approval, manufacturing, marketing, sale and distribution of generic pharmaceutical products throughout the United States, including West Virginia.

53. For example, on information and belief, Defendants act in concert, with MPI and Viatris acting as a single enterprise, and/or MPI acting as an alter ego of Viatris, with respect to the preparation, submission, approval and maintenance of ANDAs, including ANDAs and amendments thereto. On information and belief, Defendants, acting in concert, with MPI and Viatris acting as a single enterprise, and/or with MPI acting as an alter ego of Viatris, have submitted Defendants' ANDA for Defendants' ANDA Product, including amendments seeking

16

FDA approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of Defendants' ANDA Product in or into the United States, including West Virginia, prior to the expiration of the Asserted Patents, and, if Defendants' ANDA is approved, will engage in the commercial manufacture, use, sale, offer for sale, and/or importation of Defendants' ANDA Product in or into the United States, including West Virginia, prior to the expiration of the Asserted Patents.

54.     For example, on information and belief, Defendants, acting in concert, with MPI and Viatris acting as a single enterprise, and/or MPI acting as an alter ego of Viatris, have taken the costly, significant step of applying to FDA for approval, including submission of Defendants' ANDA and amendments thereto, to engage in future activities, including the marketing of Defendants' ANDA Product, that will be purposefully directed at West Virginia and elsewhere.

55.     For example, on information and belief, Defendants, acting in concert, with MPI and Viatris acting as a single enterprise, and/or MPI acting as an alter ego of Viatris, have systematic and continuous contacts with West Virginia; have established distribution channels for drug products in West Virginia; regularly and continuously conduct business in West Virginia, including by selling drug products in West Virginia, either directly or indirectly through their subsidiaries, agents, or affiliates; have purposefully availed themselves of the privilege of doing business in West Virginia; and derive substantial revenue from the sale of drug products in West Virginia.

56.     On information and belief, it would be unfair not to impute Viatris's principal place of business to MPI when Viatris has so dominated and subsumed MPI into Viatris, because Viatris acts in concert with MPI such that Viatris and MPI are a single enterprise, and/or because MPI acts as an alter ego of Viatris.

57.     On information and belief, Viatris has systematic and continuous contacts with West Virginia; has established distribution channels for drug products in West Virginia; regularly and continuously conducts business in West Virginia, including by selling drug products in West Virginia, either directly or indirectly through its subsidiaries, agents, or affiliates; has purposefully availed itself of the privilege of doing business in West Virginia; and derives substantial revenue from the sale of drug products in West Virginia.

58.     For these reasons and for other reasons that will be presented to the Court if jurisdiction is challenged, the Court has personal jurisdiction over MPI and Viatris in this District.

## VENUE

59.     The allegations above are incorporated herein by reference.

60.     Venue is proper in this District for Defendants under 28 U.S.C. §§ 1391 and 1400(b) because they reside in this District and/or maintain regular and established places of businesses and have committed acts of infringement in this District.

61.     MPI is incorporated in the State of West Virginia and therefore resides in this District.  Further, MPI has also committed acts of infringement in this District by, for example, preparing and submitting Defendants' ANDA, including with MPI acting as Viatris's agent, and/or MPI acting as Viatris's alter ego, and/or MPI acting in concert with Viatris.

62.     MPI's West Virginia residence should be imputed to Viatris as an alter ego of MPI or as a single enterprise with MPI due to a lack of corporate separateness between Viatris and MPI. *See* Mylan Pharmaceuticals Inc.'s, Mylan Laboratories Limited's and Viatris Inc.'s Answer, Affirmative Defenses, and Mylan Pharmaceuticals Inc.'s Counterclaims to Complaint, C.A. No. 22-cv-1395-RGA (D. Del. Jan. 17, 2023), ECF No. 49. On information and belief, Viatris has also committed acts of infringement in this District by, for example, controlling, directing, aiding, abetting, contributing to, or participating in the submission of Defendants' ANDA, including with

MPI acting as Viatris's agent, and/or MPI acting as Viatris's alter ego, and/or MPI acting in concert with Viatris.

63.     Further, venue is proper with respect to Viatris and MPI for other reasons that will be presented to the Court if venue is challenged.

## THE PATENTS-IN-SUIT

### U.S. Patent No. 10,278,923

64.     The allegations above are incorporated herein by reference.

65.     Novo Nordisk A/S is the owner of all rights, title, and interest in the '923 Patent, entitled "Oral Dosing of GLP-1 Compounds."  The USPTO duly and legally issued the '923 Patent on May 7, 2019.  The '923 Patent names Flemming S. Nielsen and Per Sauerberg as inventors. All named inventors assigned the '923 Patent to Novo Nordisk A/S.  Novo Nordisk has the right to enforce the '923 Patent and sue for infringement thereof.  A true and correct copy of the '923 Patent is attached to this Complaint as Exhibit 2.

66.     The '923 Patent claims, among others, a method for treating diabetes and/or obesity in a subject in need of such treatment, comprising orally administering to said subject a therapeutically effective amount of a solid oral dosage form composition comprising a GLP-1 peptide that is from a group including semaglutide and has a plasma half-life in humans of at least 60 hours, an enhancer that is a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, and wherein the composition is administered such that the ratio between the plasma half-life in days in humans of the GLP-1 peptide and the dosing interval in days of said composition is more than 2:1.

### U.S. Patent No. 11,033,499

67.     The allegations above are incorporated herein by reference.

68.     Novo Nordisk A/S is the owner of all rights, title, and interest in the '499 Patent, entitled "Tablet Formulation Comprising a GLP-1 Peptide and a Delivery Agent."  The USPTO

duly and legally issued the '499 Patent on June 15, 2021.  The '499 Patent names Simon Bjerregaard Jensen, Per Sauerberg, Flemming S. Nielsen, Betty L. Pedersen, and Erik Skibsted as inventors.  All named inventors assigned the '499 Patent to Novo Nordisk A/S.  Novo Nordisk has the right to enforce the '499 Patent and sue for infringement thereof.  A true and correct copy of the '499 Patent is attached to this Complaint as Exhibit 3.

69.    The '499 Patent claims, among others, a tablet comprising a granulate comprising no more than 15% (w/w) GLP-1 peptide, wherein the GLP-1 peptide is a peptide; and at least 50% (w/w) salt of NAC; wherein said tablet has a bulk density of at least 1.0 $g/cm^3$, a median pore diameter of no more than 1.5 µm, and a feature selected from the group consisting of a maximum pore diameter of no more than 4 µm, a crushing strength of 50–400 N, and a disintegration time of 22 minutes or less.

**U.S. Patent No. 11,833,248**

70.    The allegations above are incorporated herein by reference.

71.    Novo Nordisk A/S is the owner of all rights, title, and interest in the '248 Patent, entitled "Solid Compositions Comprising a GLP-1 Agonist and a Salt of N-(8-(2-Hydroxybenzoyl)Amino)Caprylic Acid."  The USPTO duly and legally issued the '248 Patent on December 5, 2023.  The '248 Patent names Betty Lomstein Pedersen and Birgitte Nissen as inventors.  All named inventors assigned the '248 Patent to Novo Nordisk A/S.  Novo Nordisk has the right to enforce the '248 Patent and sue for infringement thereof.  A true and correct copy of the '248 Patent is attached to this Complaint as Exhibit 4.

72.    The '248 Patent claims, among others, a pharmaceutical composition consisting essentially of semaglutide, magnesium stearate, and SNAC, wherein the pharmaceutical composition comprises 2–5 mg of the magnesium stearate per 100 mg of the SNAC; and wherein the pharmaceutical composition does not comprise a binder or filler.

**U.S. Patent No. 12,396,953**

73.     The allegations above are incorporated herein by reference.

74.     Novo Nordisk A/S is the owner of all rights, title, and interest in the '953 Patent, entitled "Solid Compositions Comprising a GLP-1 Agonist and a Salt of N-(8-(2-Hydroxybenzoyl)Amino)Caprylic Acid."  The USPTO duly and legally issued the '953 Patent on August 26, 2025.  The '953 Patent names Betty Lomstein Pedersen and Birgitte Nissen as inventors.  All named inventors assigned the '953 Patent to Novo Nordisk A/S.  Novo Nordisk has the right to enforce the '953 Patent and sue for infringement thereof.  A true and correct copy of the '953 Patent is attached to this Complaint as Exhibit 5.

75.     The '953 Patent claims, among others, a pharmaceutical composition comprising semaglutide, SNAC, and magnesium stearate, wherein the semaglutide is in the amount of 0.2 to 100 mg, and wherein the composition comprises 2–5 mg of the magnesium stearate per 100 mg of the SNAC, and wherein the SNAC is at least 95% (w/w) of the excipients of the composition.

**COUNT I**
**(INFRINGEMENT OF THE '923 PATENT)**

76.     The allegations above are incorporated herein by reference.

77.     Defendants submitted Defendants' ANDA under § 505(j) of the FFDCA to obtain approval to commercially manufacture, use, offer to sell, sell, distribute, and/or import Defendants' ANDA Product before the expiration of the '923 Patent, including any extensions thereof.

78.     The Notice Letter states that Defendants' ANDA was submitted to obtain approval to commercially manufacture, use, offer to sell, sell, distribute, and/or import Defendants' ANDA Product before the expiration of the '923 Patent.  The Notice Letter represents that Defendants' ANDA was submitted with a Paragraph IV Certification that "no valid claim of the Listed Patents will be infringed, prior to the expiration of the Listed Patents, by the manufacture, use or sale of

the drug product that is the subject of [Defendants'] ANDA, and/or that the Listed Patents are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or that the Listed Patents are unenforceable."

79.    The '923 Patent is listed in the Orange Book for WEGOVY® tablets.

80.    Defendants have actual knowledge of the '923 Patent.

81.    The WEGOVY® Label identifies the active ingredient as semaglutide and the inactive ingredients as SNAC and magnesium stearate for WEGOVY® tablets.

82.    The WEGOVY® Label instructs physicians, prescribers, and/or patients that WEGOVY® tablets are to be administered once daily by oral tablet.

83.    The WEGOVY® Label instructs physicians, prescribers, and/or patients that "WEGOVY is a glucagon-like peptide-1 (GLP-1) receptor agonist" and "WEGOVY tablets are indicated in combination with a reduced calorie diet and increased physical activity" "[t]o reduce the risk of major adverse CV events (CV death, non-fatal myocardial infarction, or non-fatal stroke) in adults with established CV disease and either obesity or overweight" and "[t]o reduce excess body weight and maintain weight reduction long term in adults with obesity, or in adults with overweight in the presence of at least one weight-related comorbid condition."

84.    The WEGOVY® Label instructs physicians, prescribers, and/or patients to administer WEGOVY® tablets according to a dose escalation schedule that includes initiating a dosage of 1.5 mg of semaglutide once daily for 30 days, increasing the dosage to 4 mg once daily for the next 30 days, then increasing the dosage to 9 mg once daily for the next 30 days, and then increasing the dosage to 25 mg once daily.

85.    The WEGOVY® Label states that the half-life of semaglutide is approximately one week.

86. The use of WEGOVY® tablets in accordance with the WEGOVY® label is covered by at least claim 14 of the '923 Patent.

87. Thus, the use of any corresponding generic semaglutide tablets in accordance with the WEGOVY® Label is covered by at least claim 14 of the '923 Patent.

88. On information and belief, Defendants' ANDA essentially copies the WEGOVY® Label, including as required by FDA, *see* 21 C.F.R. § 314.94(a)(8)(iv), and therefore instructs, recommends, encourages, promotes, and/or suggests that physicians, prescribers, and/or patients infringe at least claim 14 of the '923 Patent.

89. On information and belief, if Defendants' ANDA is approved, physicians, prescribers, and/or patients will follow the instructions in the proposed label for Defendants' ANDA Product and thereby infringe at least claim 14 of the '923 Patent.

90. WEGOVY® tablets and any corresponding generic semaglutide tablets are not staple articles of commerce and have no substantial approved uses that do not infringe at least claim 14 of the '923 Patent. On information and belief, Defendants' ANDA Product is not a staple article of commerce and has no substantial uses that do not infringe at least claim 14 of the '923 Patent.

91. Defendants have infringed at least claim 14 of the '923 Patent under 35 U.S.C. § 271(e)(2)(A) by their submission of Defendants' ANDA to FDA seeking to obtain approval for Defendants' ANDA Product, which is covered by at least claim 14 of the '923 Patent, before the expiration of the '923 Patent.

92. On information and belief, if Defendants' ANDA is approved, Defendants will make, use, offer for sale, sell, distribute, and/or import Defendants' ANDA Product in a manner that, when used in accordance with the instructions of the proposed label for Defendants' ANDA

Product, would directly infringe, induce infringement, and/or contribute to infringement of at least claim 14 of the '923 Patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

93.     Novo Nordisk seeks an order requiring that Defendants amend their Paragraph IV Certification in Defendants' ANDA to a Paragraph III Certification as to the '923 Patent, as provided in 21 C.F.R. § 314.94(a)(12)(i)(A)(3).

94.     Novo Nordisk seeks an order declaring that Defendants have infringed at least claim 14 of the '923 Patent by submitting Defendants' ANDA pursuant to 35 U.S.C. § 271(e)(2)(A).

95.     Novo Nordisk seeks an order declaring that Defendants will infringe at least claim 14 of the '923 Patent by commercially manufacturing, using, offering to sell, selling, distributing, and/or importing Defendants' ANDA Product before the expiration of the '923 Patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

96.     Novo Nordisk seeks an order pursuant to 35 U.S.C. § 271(e)(4)(A), providing that the effective date of any FDA approval of Defendants' ANDA be a date that is not earlier than the expiration of the '923 Patent or any later expiration of extensions, adjustments, and exclusivities for the '923 Patent to which Novo Nordisk becomes entitled.

97.     Novo Nordisk will be irreparably harmed if Defendants are not enjoined from infringing, actively inducing the infringement of, and/or contributing to the infringement of at least claim 14 of the '923 Patent.  Pursuant to 35 U.S.C. §§ 271(e)(4)(B) and 283, Novo Nordisk is entitled to a permanent injunction against further infringement.  Novo Nordisk does not have an adequate remedy at law.

98.     On information and belief, Defendants' Detailed Statement setting forth the purported factual and legal bases for their opinion regarding infringement and validity of the '923

Patent is devoid of an objective good faith basis in the facts or the law.

99.    This case is exceptional, and Novo Nordisk is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

100.    To the extent Defendants commercialize Defendants' ANDA Product prior to the expiration of the '923 Patent, Novo Nordisk will also be entitled to damages under 35 U.S.C. §§ 271(e)(4)(C) and 284.

**COUNT II**
**(INFRINGEMENT OF THE '499 PATENT)**

101.    The allegations above are incorporated herein by reference.

102.    Defendants submitted Defendants' ANDA under § 505(j) of the FFDCA to obtain approval to commercially manufacture, use, offer to sell, sell, distribute, and/or import Defendants' ANDA Product before the expiration of the '499 Patent, including any extensions thereof.

103.    The Notice Letter states that Defendants' ANDA was submitted to obtain approval to commercially manufacture, use, offer to sell, sell, distribute, and/or import Defendants' ANDA Product before the expiration of the '499 Patent.  The Notice Letter represents that Defendants' ANDA was submitted with a Paragraph IV Certification that "no valid claim of the Listed Patents will be infringed, prior to the expiration of the Listed Patents, by the manufacture, use or sale of the drug product that is the subject of [Defendants'] ANDA, and/or that the Listed Patents are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or that the Listed Patents are unenforceable."

104.    Defendants have infringed one or more claims of the '499 Patent under 35 U.S.C. § 271(e)(2)(A) by virtue of the filing of Defendants' ANDA seeking approval to commercially manufacture, use, offer to sell, sell, distribute, and/or import Defendants' ANDA Product before the expiration of the '499 Patent.

25

105. The '499 Patent is listed in the Orange Book for WEGOVY® tablets.

106. Defendants have actual knowledge of the '499 Patent.

107. The WEGOVY® Label provides that WEGOVY® tablets are for oral use.

108. The WEGOVY® Label identifies the active ingredient as semaglutide and the inactive ingredients as SNAC and magnesium stearate for WEGOVY®.

109. The WEGOVY® Label states that WEGOVY® tablets are available in multiple dosage strengths, including a dosage strength with 9 mg of semaglutide.

110. WEGOVY® tablets are covered by at least claim 1 of the '499 Patent.

111. Thus, any corresponding generic semaglutide tablets are covered by at least claim 1 of the '499 Patent.

112. On information and belief, Defendants' ANDA essentially copies the WEGOVY® Label and the WEGOVY® tablet composition, including as required by FDA, *see* 21 C.F.R. §§ 314.94(a)(5), 314.94(a)(8)(iv), and as such, the composition of Defendants' ANDA Product is identical or substantially identical to that of WEGOVY® tablets (9 mg).

113. On information and belief, Defendants' ANDA will purport to show that Defendants' ANDA Product has the same strength as WEGOVY® tablets (9 mg), *see* 21 C.F.R. § 314.94(a)(6), and as such, the composition of Defendants' ANDA Product is identical or substantially identical to that of WEGOVY® tablets (9 mg).

114. On information and belief, Defendants' ANDA will purport to show that Defendants' ANDA Product is bioequivalent to WEGOVY® tablets (9 mg), *see* 21 C.F.R. § 314.94(a)(7), and as such, the composition of Defendants' ANDA Product is identical or substantially identical to that of WEGOVY® tablets (9 mg).

115. Defendants have infringed at least claim 1 of the '499 Patent under 35 U.S.C.

§ 271(e)(2)(A) by their submission of Defendants' ANDA to FDA seeking to obtain approval for Defendants' ANDA Product, which is covered by at least claim 1 of the '499 Patent, before the expiration of the '499 Patent.

116. On information and belief, if Defendants' ANDA is approved, Defendants will make, use, offer for sale, sell, distribute, and/or import Defendants' ANDA Product in a manner that would directly infringe at least claim 1 of the '499 Patent under 35 U.S.C. § 271(a).

117. Novo Nordisk seeks an order requiring that Defendants amend any Paragraph IV Certification in Defendants' ANDA to a Paragraph III Certification as to the '499 Patent, as provided in 21 C.F.R. § 314.94(a)(12)(i)(A)(3).

118. Novo Nordisk seeks an order declaring that Defendants have infringed at least claim 1 of the '499 Patent by submitting Defendants' ANDA pursuant to 35 U.S.C. § 271(e)(2)(A).

119. Novo Nordisk seeks an order declaring that Defendants will infringe at least claim 1 of the '499 Patent by commercially manufacturing, using, offering to sell, selling, distributing, and/or importing Defendants' ANDA Product before the expiration of the '499 Patent under 35 U.S.C. § 271(a).

120. Novo Nordisk seeks an order, pursuant to 35 U.S.C. § 271(e)(4)(A), providing that the effective date of any FDA approval of Defendants' ANDA be a date that is not earlier than the expiration of the '499 Patent or any later expiration of extensions, adjustments, and exclusivities for the '499 Patent to which Novo Nordisk becomes entitled.

121. Novo Nordisk will be irreparably harmed if Defendants are not enjoined from infringing at least claim 1 of the '499 Patent.  Pursuant to 35 U.S.C. §§ 271(e)(4)(B) and 283, Novo Nordisk is entitled to a permanent injunction against further infringement.  Novo Nordisk

does not have an adequate remedy at law.

122. This case is exceptional, and Novo Nordisk is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

123. To the extent Defendants commercialize Defendants' ANDA Product prior to the expiration of the '499 Patent, Novo Nordisk will also be entitled to damages under 35 U.S.C. §§ 271(e)(4)(C) and 284.

**COUNT III**
**(INFRINGEMENT OF THE '248 PATENT)**

124. The allegations above are incorporated herein by reference.

125. Defendants submitted Defendants' ANDA under § 505(j) of the FFDCA to obtain approval to commercially manufacture, use, offer to sell, sell, distribute, and/or import Defendants' ANDA Product before the expiration of the '248 Patent, including any extensions thereof.

126. The Notice Letter states that Defendants' ANDA was submitted to obtain approval to commercially manufacture, use, offer to sell, sell, distribute, and/or import Defendants' ANDA Product before the expiration of the '248 Patent. The Notice Letter represents that Defendants' ANDA was submitted with a Paragraph IV Certification that "no valid claim of the Listed Patents will be infringed, prior to the expiration of the Listed Patents, by the manufacture, use or sale of the drug product that is the subject of [Defendants'] ANDA, and/or that the Listed Patents are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or that the Listed Patents are unenforceable."

127. The '248 Patent is listed in the Orange Book for WEGOVY® tablets.

128. Defendants have actual knowledge of the '248 Patent.

129. The WEGOVY® Label provides that WEGOVY® tablets are for oral use.

130. The WEGOVY® Label identifies the active ingredient as semaglutide and the

inactive ingredients as SNAC and magnesium stearate for WEGOVY® tablets.

131.    The WEGOVY® Label states that WEGOVY® tablets are available in multiple dosage strengths, including a dosage strength with 9 mg of semaglutide.

132.    WEGOVY® tablets are covered by at least claim 1 of the '248 Patent.

133.    Thus, any corresponding generic semaglutide tablets are covered by at least claim 1 of the '248 Patent.

134.    On information and belief, Defendants' ANDA essentially copies the WEGOVY® Label and the WEGOVY® tablet composition, including as required by FDA, *see* 21 C.F.R. §§ 314.94(a)(5), 314.94(a)(8)(iv), and as such, the composition of Defendants' ANDA Product is identical or substantially identical to that of WEGOVY® tablets (9 mg).

135.    On information and belief, Defendants' ANDA will purport to show that Defendants' ANDA Product has the same strength as WEGOVY® tablets (9 mg), *see* 21 C.F.R. § 314.94(a)(6), and as such, the composition of Defendants' ANDA Product is identical or substantially identical to that of WEGOVY® tablets (9 mg).

136.    On information and belief, Defendants' ANDA will purport to show that Defendants' ANDA Product is bioequivalent to WEGOVY® tablets (9 mg), *see* 21 C.F.R. § 314.94(a)(7), and as such, the composition of Defendants' ANDA Product is identical or substantially identical to that of WEGOVY® tablets (9 mg).

137.    Defendants have infringed at least claim 1 of the '248 Patent under 35 U.S.C. § 271(e)(2)(A) by their submission of Defendants' ANDA to FDA seeking to obtain approval for Defendants' ANDA Product, which is covered by at least claim 1 of the '248 Patent, before the expiration of the '248 Patent.

138.    On information and belief, if Defendants' ANDA is approved, Defendants will

make, use, offer for sale, sell, distribute, and/or import Defendants' ANDA Product in a manner that would directly infringe at least claim 1 of the '248 Patent under 35 U.S.C. § 271(a).

139.    Novo Nordisk seeks an order requiring that Defendants amend their Paragraph IV Certification in Defendants' ANDA to a Paragraph III Certification as to the '248 Patent, as provided in 21 C.F.R. § 314.94(a)(12)(i)(A)(3).

140.    Novo Nordisk seeks an order declaring that Defendants have infringed at least claim 1 of the '248 Patent by submitting Defendants' ANDA pursuant to 35 U.S.C. § 271(e)(2)(A).

141.    Novo Nordisk seeks an order declaring that Defendants will infringe at least claim 1 of the '248 Patent by commercially manufacturing, using, offering to sell, selling, distributing, and/or importing Defendants' ANDA Product before the expiration of the '248 Patent under 35 U.S.C. § 271(a).

142.    Novo Nordisk seeks an order, pursuant to 35 U.S.C. § 271(e)(4)(A), providing that the effective date of any FDA approval of Defendants' ANDA be a date that is not earlier than the expiration of the '248 Patent or any later expiration of extensions, adjustments, and exclusivities for the '248 Patent to which Novo Nordisk becomes entitled.

143.    Novo Nordisk will be irreparably harmed if Defendants are not enjoined from infringing at least claim 1 of the '248 Patent.  Pursuant to 35 U.S.C. §§ 271(e)(4)(B) and 283, Novo Nordisk is entitled to a permanent injunction against further infringement.  Novo Nordisk does not have an adequate remedy at law.

144.    On information and belief, Defendants' Detailed Statement setting forth the purported factual and legal bases for their opinion regarding infringement and validity of the '248 Patent is devoid of an objective good faith basis in the facts or the law.

145.    This case is exceptional, and Novo Nordisk is entitled to attorneys' fees pursuant

to 35 U.S.C. § 285.

146.    To the extent Defendants commercialize Defendants' ANDA Product prior to the expiration of the '248 Patent, Novo Nordisk will also be entitled to damages under 35 U.S.C. §§ 271(e)(4)(C) and 284.

## COUNT IV
## (INFRINGEMENT OF THE '953 PATENT)

147.    The allegations above are incorporated herein by reference.

148.    Defendants submitted Defendants' ANDA under § 505(j) of the FFDCA to obtain approval to commercially manufacture, use, offer to sell, sell, distribute, and/or import Defendants' ANDA Product before the expiration of the '953 Patent, and any extensions thereof.

149.    The Notice Letter states that Defendants' ANDA was submitted to obtain approval to commercially manufacture, use, offer to sell, sell, distribute, and/or import Defendants' ANDA Product before the expiration of the '953 Patent.  The Notice Letter represents that Defendants' ANDA was submitted with a Paragraph IV Certification that "no valid claim of the Listed Patents will be infringed, prior to the expiration of the Listed Patents, by the manufacture, use or sale of the drug product that is the subject of [Defendants'] ANDA, and/or that the Listed Patents are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or that the Listed Patents are unenforceable."

150.    The '953 Patent is listed in the Orange Book for WEGOVY® tablets.

151.    Defendants have actual knowledge of the '953 Patent.

152.    The WEGOVY® Label provides that WEGOVY® tablets are for oral use.

153.    The WEGOVY® Label identifies the active ingredient as semaglutide and the inactive ingredients as SNAC and magnesium stearate for WEGOVY® tablets.

154.    The WEGOVY® Label states that WEGOVY® tablets are available in multiple

dosage strengths, including a dosage strength with 9 mg of semaglutide.

155.    WEGOVY® tablets are covered by at least claim 1 of the '953 Patent.

156.    Thus, any corresponding generic semaglutide tablets are covered by at least claim 1 of the '953 Patent.

157.    On information and belief, Defendants' ANDA essentially copies the WEGOVY® Label and the WEGOVY® tablet composition, including as required by FDA, *see* 21 C.F.R. §§ 314.94(a)(5), 314.94(a)(8)(iv), and as such, the composition of Defendants' ANDA Product is identical or substantially identical to that of WEGOVY® tablets (9 mg).

158.    On information and belief, Defendants' ANDA will purport to show that Defendants' ANDA Product has the same strength as WEGOVY® tablets (9 mg), *see* 21 C.F.R. § 314.94(a)(6), and as such, the composition of Defendants' ANDA Product is identical or substantially identical to that of WEGOVY® tablets (9 mg).

159.    On information and belief, Defendants' ANDA will purport to show that Defendants' ANDA Product is bioequivalent to WEGOVY® tablets (9 mg), *see* 21 C.F.R. § 314.94(a)(7), and as such, the composition of Defendants' ANDA Product is identical or substantially identical to that of WEGOVY® tablets (9 mg).

160.    Defendants have infringed at least claim 1 of the '953 Patent under 35 U.S.C. § 271(e)(2)(A) by their submission of Defendants' ANDA to FDA seeking to obtain approval for Defendants' ANDA Product, which is covered by at least claim 1 of the '953 Patent, before the expiration of the '953 Patent.

161.    On information and belief, if Defendants' ANDA is approved, Defendants will make, use, offer for sale, sell, distribute, and/or import Defendants' ANDA Product in a manner that would directly infringe at least claim 1 of the '953 Patent under 35 U.S.C. § 271(a).

162.    Novo Nordisk seeks an order requiring that Defendants amend their Paragraph IV Certification in Defendants' ANDA to a Paragraph III Certification as to the '953 Patent, as provided in 21 C.F.R. § 314.94(a)(12)(i)(A)(3).

163.    Novo Nordisk seeks an order declaring that Defendants have infringed at least claim 1 of the '953 Patent by submitting Defendants' ANDA pursuant to 35 U.S.C. § 271(e)(2)(A).

164.    Novo Nordisk seeks an order declaring that Defendants will infringe at least claim 1 of the '953 Patent by commercially manufacturing, using, offering to sell, selling, distributing, and/or importing Defendants' ANDA Product before the expiration of the '953 Patent under 35 U.S.C. § 271(a).

165.    Novo Nordisk seeks an order, pursuant to 35 U.S.C. § 271(e)(4)(A), providing that the effective date of any FDA approval of Defendants' ANDA be a date that is not earlier than the expiration of the '953 Patent or any later expiration of extensions, adjustments, and exclusivities for the '953 Patent to which Novo Nordisk becomes entitled.

166.    Novo Nordisk will be irreparably harmed if Defendants are not enjoined from infringing at least claim 1 of the '953 Patent.  Pursuant to 35 U.S.C. §§ 271(e)(4)(B) and 283, Novo Nordisk is entitled to a permanent injunction against further infringement.  Novo Nordisk does not have an adequate remedy at law.

167.    On information and belief, Defendants' Detailed Statement setting forth the purported factual and legal bases for their opinion regarding infringement and validity of the '953 Patent is devoid of an objective good faith basis in the facts or the law.

168.    This case is exceptional, and Novo Nordisk is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

169.    To the extent Defendants commercialize Defendants' ANDA Product prior to the expiration of the '953 Patent, Novo Nordisk will also be entitled to damages under 35 U.S.C. §§ 271(e)(4)(C) and 284.

### PRAYER FOR RELIEF

WHEREFORE, Novo Nordisk respectfully requests that this Court enter judgment in their favor against Defendants and grant the following relief:

A.    A judgment that Defendants have infringed one or more claims of each of the Asserted Patents under 35 U.S.C. § 271(e)(2)(A) by submitting to FDA Defendants' ANDA, including any amendments or supplements thereof, to obtain approval for the commercial manufacture, use, offer for sale, sale, distribution in, and/or importation into the United States of Defendants' ANDA Product before the expiration of the Asserted Patents, or any later period of exclusivity to which Novo Nordisk is or may become entitled;

B.    A judgment declaring that Defendants will directly infringe, contribute to the direct infringement of, and/or induce the direct infringement of one or more claims of each of the Asserted Patents under 35 U.S.C. §§ 271(a), (b), and/or (c) if they market, manufacture, use, offer for sale, sell, distribute in, and/or import into the United States Defendants' ANDA Product before the expiration of the Asserted Patents, or any later period of exclusivity to which Novo Nordisk is or may become entitled;

C.    An order requiring that Defendants amend their Paragraph IV Certification to a Paragraph III Certification as to the Asserted Patents, as provided in 21 C.F.R. § 314.94(a)(12)(i)(A)(3);

D.    An order, pursuant to 35 U.S.C. § 271(e)(4)(A), providing that the effective date of any FDA approval of Defendants' ANDA for Defendants' ANDA Product be a date that is not

earlier than the latest date of the expiration of the Asserted Patents or any later period of exclusivity to which Novo Nordisk is or may become entitled;

E.      An order, pursuant to 35 U.S.C. §§ 271(e)(4)(B) and 283, enjoining Defendants, their officers, agents, servants, employees, attorneys, affiliates, divisions, subsidiaries, and those persons in active concert or participation with any of them, from infringing the Asserted Patents and/or contributing to or inducing anyone to do the same, including the manufacture, use, offer to sell, sale, distribution, and/or importation of any current or future versions of the product described in Defendants' ANDA, before the expiration of the Asserted Patents, including any applicable extensions, adjustments, and exclusivities;

F.      If Defendants commercially manufacture, use, offer to sell, sell, or distribute in the United States and/or import into the United States the ANDA Product prior to the expiration of the Asserted Patents, including any applicable extensions, adjustments, and exclusivities, a judgment pursuant to 35 U.S.C. §§ 271(e)(4)(C) and 284 awarding Novo Nordisk monetary relief, together with an assessment of pre-judgment and post-judgment interest;

G.      An award to Novo Nordisk of its attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285;

H.      An award to Novo Nordisk of its costs and expenses in this action; and

I.      Such other and further relief as this Court may deem just and proper.

Dated:  August 7, 2026

Respectfully submitted,

SCHRADER DUFF LAW & LOWE, PLLC

/s/  *Sandra K. Law*
Sandra K. Law (#6071)

OF COUNSEL (*pro hac vice* forthcoming):

401 Main Street
Wheeling, WV 26003

Nicholas Groombridge
Peter Sandel
Jenny Wu
Daniel J. Klein
Joshua Reich
Ariella C. Barel
GROOMBRIDGE, WU, BAUGHMAN
   & STONE LLP
565 Fifth Avenue, Suite 2900
New York, NY 10017
(332) 269-0030

(304) 233-3390
skl@schraderlaw.com

*Attorneys for Novo Nordisk Inc. and
Novo Nordisk A/S*

Joshua Rosefelt
Alyssa Ertel
GROOMBRIDGE, WU, BAUGHMAN
   & STONE LLP
801 17th Street, NW, Suite 1050
Washington, DC 20006
(202) 505-5830